**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ERNEST J. GIUSTI, III, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>versus<br><br>HPS ADVISORY SERVICES LLC,. | **CIVIL ACTION NO.**<br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL**<br><br>**JUDGE:**<br><br>**MAGISTRATE JUDGE:** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff, Ernest J. Giusti, III, individually and on behalf of all other similarly situated (the "Class"), by and through the undersigned, bring this class action against Defendant, HPS Advisory Services, LLC, and allege as follows:

**THE PARTIES**

1. Plaintiff, Ernest J. Giusti, III, individually and on behalf of all others similarly situated, is a person of the age of majority, domiciled in the State of Louisiana, Parish of Jefferson, within the boundaries of the Eastern District of Louisiana.
2. Defendant, **HPS ADVISORY SERVICES LLC** ("HPS"), on information and belief, a Texas limited liability company authorized to do business and doing business in the State of Louisiana, domiciled in Dallas, Texas.

**FACTUAL ALLEGATIONS**

3. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

4. Plaintiff and members of the proposed class are franchise owners and employees of Goosehead Insurance ("Goosehead"), as well as their spouses, domestic partners, and dependents.

5. Upon information and belief, Goosehead has roughly 200 agencies nationwide spread across fifty states. Each agency has a separate owner and respective employees.

6. In 2023, Plaintiff and members of the proposed class were informed that they were able to obtain UnitedHealthcare, Inc. ("UnitedHealthcare") insurance (through Goosehead) for themselves (provided they worked at least 30 hours per week), their spouse or domestic partner, children up to the age of 26, disabled tax dependents over the age of 26, and children named in Qualified Medical Child Support Order(s) (hereinafter the "Plan").

7. Plaintiff and proposed class members obtained the Plan.

8. The Plan was administered by HPS, or, alternatively, administered by HPS in connection with other parties.

9. HPS is a fiduciary of the Plan, as they maintain control or authority over the administration of the Plan, and suit is proper under 29 USCA 1132(a)(1)(B).

10. In the alternative, should the Court determine that HPS is not a fiduciary of the Plan, HPS participated in a violation of ERISA, and suit is proper under 29 USCA 1132(a)(3).

11. Upon information and belief, the medical insurance that Goosehead provided Plaintiff and members of the proposed class was through HPS.

12. After notification that they were covered under the Plan, Plaintiff and proposed class members suffered losses, as they were required to pay higher out-of-pocket costs to medical providers, due to the fact that HPS, or other entities, failed to pay timely , or at all, as required under the Plan.

13. The nonpayment and failures to timely pay claims were the result of HPS' breaches of fiduciary duty and/or want of prudence, care, skill, and diligence.
14. The nonpayment and/or failure to timely pay claims led to Plaintiff's and class members' denial of care, inability to obtain medical care, obtain care as intended, and/or the delay of such care.
15. Many of the claims under the Plan of Plaintiff and members of the proposed class remain unpaid to date, or payment was delayed such that treatment was interrupted or denied, or they were paid by Plaintiff and class members without any reimbursement.
16. Upon information and belief, HPS failed to adopt, implement, and follow reasonable standards for the prompt investigation and processing of claims arising under the Plan.
17. Thereafter, and without warning, Plaintiff and members of the proposed class received notification that their insurance had been cancelled while unpaid claims remained outstanding.
18. The notification that Plaintiff and members of the proposed class received about the cancellation came *after* the cancellation, with no mechanism for an administrative appeal or remedy.
19. This cancellation was the result of the HPS' breaches of fiduciary duty and/or want of prudence, care, skill, and diligence.
20. This arbitrary cancellation of the health insurance for Plaintiff and members of the proposed class, with outstanding claims of medical providers for treatment rendered, led to denied claims, and collections efforts against Plaintiff and class members, at a minimum.

21. This cancellation led to the denial of medical care to Plaintiff and the proposed class members, inability to obtain care as intended, and/or the delay of such care, in addition to out-of-pocket expenses that have not been recovered.

## FACTUAL ALLEGATIONS OF CLASS REPRESENTATIVE MR. GIUSTI

### A. THE GIUSTI FAMILY PLAN

22. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.
23. In 2023, Mr. Giusti began to participate in the Plan, providing premiums for the same.
24. Mr. Giusti's Plan participation provided coverage for his wife and two children.
25. Each member of the Giusti family underwent medical care and had claims that became subjects of this complaint.
26. Many of the claims for the treatment that the Giusti Family underwent during the effective time of the Plan were unpaid as described herein.

### B. SPROUT PEDIATRICS

27. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.
28. Mr. Giusti's two minor children, who are his dependents and beneficiaries under the Plan, received medical care from Sprout Pediatrics.
29. On May 2, 2024, Plaintiff received notice that there had been a failure to pay, and/or failure to timely pay in accordance with the Plan, the claims related to this care, and that $2,224 was outstanding.

30. In efforts to resolve the unpaid claims of Sprout Pediatrics, Mr. Giusti coordinated at least two telephone conference calls with himself, ABA, and Sprout Pediatrics. These efforts did not result in payment of the claims under the Plan, nor were the claims denied.

31. Due to nonpayment, Sprout Pediatrics withdrew care.

32. Due to the denial of medical care for his children, and despite the claims being covered under the Plan for which he continued paying premiums, Mr. Giusti paid Sprout Pediatrics out-of-pocket so that his minor children could continue receiving healthcare from their providers.

### C. SOUTHERN ORTHOPAEDIC SPECIALISTS

33. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

34. Prior to the effective dates of the Plan, Mr. Giusti had established care with Southern Orthopaedic Specialists.

35. Dr. Giusti underwent shoulder surgery and was diagnosed with bone spurs, elbow pain, and plantar fascia at Southern Orthopaedic Specialists.

36. On October 10, 2024, Mr. Giusti was notified that a claim in the amount of $8,050 for Southern Orthopaedic Specialists was not paid under the Plan, although it was incurred during the pendency of the Plan.

37. On November 1, 2024, Mr. Giusti was notified that a claim in the amount of $365 was not paid by the Plan.

38. Due to the failure to pay Southern Orthopaedic Specilists under the Plan, Mr. Giusti has been unable to continue care with this treating provider.

39. Mr. Giusti continues to suffer with bone spurs, elbow pain, and plantar fascia, and has been unable to make an appointment with this provider due to the failure to pay the claims under the Plan.

**D. OTHER PROVIDERS**

40. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

41. Mr. Giusti's wife, who is a beneficiary under the Plan, received care through Metropolitan Gastroenterology Association and Jefferson Psychiatric Association, which was intended to be covered under the Plan.

42. On May 16, 2024, and November 25, 2024, Mr. Giusti was notified that the Plan failed to pay Jefferson Psychiatric Association in the amount of $90.

43. On March 28, 2024, Mr. Giusti was notified that the Plan failed to pay Metropolitan Gastroenterology Association in the amount of $46.00.

44. Due to the Defendant(s) failures to pay these claims and the reasonable belief that his wife would be denied care, Mr. Giusti paid these claims out-of-pocket and has not been reimbursed.

45. In September and October of 2023, Mr. Giusti was treated by Alan Sheen, MD, an allergist in Metairie, Louisiana, which was intended to be covered under the Plan for which Mr. Giusti paid premiums.

46. From March 13, 2024, through October 13, 2024, Mr. Giusti received notices from Dr. Sheen of an outstanding balance in the amount of $800.

47. HPS has a fiduciary duty and is responsible for the failure to pay these claims.

48. This failure to pay by the Plan resulted in this provider engaging a collections agency.

49. The nonpayment of medical care rendered by Dr. Sheen has appeared on the Plaintiff's credit report as a derogatory notation, despite this care being covered under the Plan.

50. The Plan included dental coverage. Mr. Giusti was not informed hat the dental coverage was canceled. He learned that the dental coverage was cancelled when he brought his children in for dental care. Mr. Giusti suffered financial losses as a result of paying for dental care out of pocket as he was not notified that the coverage was cancelled.

**E. MR. GIUSTI'S OUT-OF-POCKET PAYMENTS**

51. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

52. There was a failure to pay claims related to medical treatment covered under the Plan.

53. By December 9, 2024, the following claims were unpaid and undergoing collection attempts:

| **Provider** | **Notice Date** | **Service Dates** | **Amount** |
|---|---|---|---|
| Alan E. Sheen, M.D. (Final Notice) | 03/13/24 | 9/8/23-10/9/23 | $800.00 |
| Doctors Imaging Services<br>(Certified Bureau of the South, Inc.) | 06/06/24 | | $65.45 |
| Radiology & Interventional Assoc. of Metairie<br>(Certified Bureau of the South) | 03/13/24 | | $64.67 |
| LCMC Anesthesia Corp<br>(Frost Arnett Co.) | 10/22/24 | 07/02/24 | $689.10 |
| Jefferson Psychiatric Assoc. | 05/16/24 | 04/15/24 | $50.00 |
| Jefferson Psychiatric Assoc. | 11/25/24 | 11/04/24 | $40.00 |
| LCMC (CT/Radiology/Supplies) | 08/13/24 | 07/01/24 | $347.77 |
| LCMC (Radiology/Diagnostic) | 08/23/24 | 07/22/24 | $145.22 |
| LCMC | 10/08/24 | 07/02/24 | $3,512.94 |
| LCMC Urgent Care | 10/23/24 | 10/24/24 | $170.00 |
| Metairie Dental Centre | 10/23/24 | 10/08/24 | $174.50 |
| Metropolitan Gastroenterology Assoc. | 03/28/24 | 09/29/23 | $46.00 |
| Quest Diagnostics | 04/04/24 | 09/01/23 | $35.80 |
| Rapid Urgent Care | 11/05/24 | 07/19/23 | $330.00 |
| Sanctuary Dermatology | 04/10/24 | 03/13/24 | $112.88 |

| | | | |
|---|---|---|---|
| Sanctuary Dermatology | 06/26/24 | 04/23/24 | $142.91 |
| South La. Ear Nose Throat & Facial | 03/07/24 | 12/22/22 | $ 7.51 |
| Southern Orthopaedic Specialists* | 10/10/24 | 10/08/24 | $8,050 |
| Southern Orthopaedic Specialists (PT) | 11/01/24 | 05/01/24 | $365.00 |
| Sprout Pediatrics | 05/02/24 | 6/30/23 – 1/26/24 | $2,224 |
| TDDC (GI Alliance) | 03/06/24 | | $258.44 |
| | | | |
| **TOTAL:** | | | **$17,278.69** |

54. Mr. Giusti paid medical providers for treatment that was covered under the Plan, out-of-pocket.

55. Mr. Giusti has not been reimbursed for these out-of-pocket expenses, which were not his responsibility as they were supposed to be covered by the Plan.

56. These expenses were incurred as a direct result, in whole or in part, of HPS' breach of duty.

### F. HPS' BREACH OF DUTY TO MR. GIUSTI

57. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

58. Upon information and belief, HPS failed to adopt, implement, and follow reasonable standards for the prompt investigation and processing of claims arising under the Plan.

59. Plaintiff received notification that the insurance under the Plan had been cancelled while unpaid claims remained outstanding.

60. The notification that Plaintiff received about the cancellation came *after* the cancellation, with no mechanism for an administrative appeal or remedy.

61. This cancellation was the result, in whole or in part, of HPS' breaches of fiduciary duty and/or want of prudence, care, skill, and diligence.

62. This arbitrary cancellation of the Plan for Plaintiff and the Giusti Family, with outstanding claims of medical providers for treatment rendered, led to denied claims, and collections efforts against Plaintiff, at a minimum.

63. This cancellation led to the denial of medical care to Plaintiff and the Giusti Family, inability to obtain care as intended, and/or the delay of such care, in addition to out-of-pocket expenses that have not been recovered.

64. Mr. Giusti was given no administrative remedy to appeal or seek redress for their failure to pay, or timely pay, claims covered under the Plan. In lieu of an administrative remedy, Plaintiff coordinated telephone calls with providers and Assured Benefits Administrators, Inc. ("ABA) who administered Plan for which HPS was a fiduciary, paid claims that should have been paid under the Plan without reimbursement, suffered derogatory items on his credit report, or went without necessary medical care.

**CLASS ALLEGATIONS**

65. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

66. After Mr. Giusti became aware of delayed and nonpayment of claims under the Plan, he discovered that other similarly situated Plan participants were experiencing the same or substantially similar losses and damages, which he learned through conversations with agent(s) and through a Facebook Group's Goosehead members.

67. Plaintiff brings this action on his behalf and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class which Plaintiff seeks to represent comprises (the "Proposed Class"):

> "All Goosehead Insurance franchise owners and employees, spouses of all Goosehead Insurance franchise owners and employees, employees, and/or all dependents of Goosehead Insurance franchise owners and employees who subscribed to a health insurance plan from HPS within the United States when it was offered in 2023 to the present who had claims which were unpaid or untimely and/or had their insurance cancelled causing monetary losses and/or the delay, interruption, or alteration of medical care."

Said definition may be further denied of amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

68. The Proposed Class is so numerous that individual joinder herein is impracticable. On information and belief, members of the Class number in the hundreds or thousands, as the policies not only included the primary policyholder, but also spouses and children.

69. The precise number of members of the Proposed Class and their identities ad unknown to Plaintiff at this time but may be determined through discovery. Proposed Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of HPS and/or Plan administrators, and third-party retailers and vendors.

70. Common questions of law and fact predominate over questions that may affect individual class members, including the following:

    a. Whether HPS failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under their insurance policies;

    b. Whether HPS failed to follow reasonable standards for the prompt investigation and processing of claims arising under their insurance policies;

c. Whether HPS followed the proper procedure for cancelling the health insurance policy covering Plaintiffs; and

d. Whether the Plan insurer could cancel the health insurance policy covering Plaintiffs, without warning.

71. Plaintiff's claims are typical of the claims of the Proposed Class and arise from the same failure to properly administer claims and/or cancellation of the policy. Plaintiffs will fairly and adequately represent and protect the interests of the Proposed Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

72. Plaintiff and the Proposed Class have suffered injury, in fact, and have lost money as a result of HPS' misconduct. Plaintiff and the Proposed Class had their policy cancelled without the proper methods of perfecting same.

73. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Proposed Class to prosecute their claims individually.

74. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by HPS conduct would increased delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

75. HPS acted on grounds generally applicable to the entire Class, thereby making relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Proposed Class members would create the risk of inconsistent or varying

adjudications with respect to individual Proposed Class members that would establish incompatible standards of conduct for HPS

76. Absent a class action, HPS will likely retain the benefits of its wrongdoing. Due to the small size of the individual Proposed Class members' claims, few, if any, Proposed Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Proposed Class will continue to suffer losses and HPS will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

**CAUSE OF ACTION – VIOLATION(S) OF ERISA**

77. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

78. As participants and/or beneficiaries under a plan, Plaintiffs have rights under the Employee Retirement Income Security Act, or ERISA.

79. As participants and/or beneficiaries under a plan, Plaintiffs have rights under 29 U.S.C. § 502.

80. HPS was, at all relevant times, a fiduciary of the Plan, as they maintained control or authority over the administration of the Plan, and Plaintiffs seek redress under 29 USCA 1132 §502(a)(1)(B).

81. In the alternative, should the Court determine that HPS was not a fiduciary, HPS participated in a violation of ERISA by failing to ensure timely payment of health benefit claims, and Plaintiffs seek redress under 29 USCA 1132(a)(3).

82. HPS breached ERISA in accordance with 29 U.S.C. 1109, which provides for breaches of fiduciary duty.

83. HPS breached ERISA in accordance with 29 U.S.C. 1133, which provides the proper procedure for claim denial.

84. HPS breached ERISA by failing to follow the proper procedure for cancellation of health insurance coverage.

85. As a direct and proximate result of HPS violations of ERISA, Plaintiffs and members of the proposed class have suffered damages in an amount to be proven at trial.

**CAUSE OF ACTION – BREACH OF CONTRACT**

86. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

87. The following cause(s) of action is pled in the alternative to the foregoing violations of ERISA.

88. HPS was a fiduciary for the Plan that formed an agreement and entered into a contract of insurance with Plaintiffs and members of the proposed class including offer, acceptance, and consideration.

89. Pursuant to that insurance agreement, Plaintiffs and members of the proposed class paid money, whether directly or indirectly, in exchange for HPS and the Plan to provide a health insurance policy to Plaintiffs and members of the proposed class.

90. HPS and its Plan received premiums in exchange for the issuance of a policy of health insurance.

91. Each insurance agreement included, without limitation, HPS' duty to exercise its fiduciary duties to policyholders, abide by applicable state laws, and adequately review and inform policyholders of any changes to their policies and/or claim denials.

92. Plaintiffs and members of the proposed class performed their obligations under the contract by paying the amounts due under the contract timely.

93. HPS breached its duty under each insurance agreement by, without limitation, failing to keep its promise to fulfill its fiduciary duties to policyholders, abide by applicable state laws, provide a thorough, fair, and objective investigation of each submitted claim prior to a claim denial, and to provide written statements to Plaintiffs and members of the proposed class, accurately listing all bases for the denial of claims and the factual and legal bases for each reason given for such denial.

94. HPS additionally breached agreement by, without limitation, failing to properly pay third-party providers relative to claims made by the proposed class members.

95. HPS additionally breached insurance agreement by, without limitation, failing to notify Plaintiffs and members of the proposed class that their policy was subject to cancellation and/or was being cancelled prior to its cancellation in fact.

96. As a direct and proximate result of HPS' breach of contract, Plaintiffs and members of the proposed class have suffered damages in an amount to be proven at trial.

97. In the alternative to the relevant portions of the foregoing, Plaintiffs and members of the proposed class are third-party beneficiaries to the agreements of HPS, which inured to the express benefit of Plaintiffs and members of the proposed class.

**CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

98. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

99. Plaintiffs and members of the proposed class entered into written insurance agreements provided under the Plansthat provided for coverage for medical services administered by healthcare providers.

100. Pursuant to the contracts, HPS implied and covenanted that they would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of Plaintiffs' and members of the proposed class's claims.

101. Pursuant to the contracts, HPS implied and covenanted that they would act in good faith and follow the law and the contracts with respect to the notification of cancellation of the policy or any benefits thereof.

102. HPS has breached their duty of good faith and fair dealing under the insurance contracts with Plaintiffs and members of the proposed class.

103. As a direct and proximate result of HPS' breaches, Plaintiff and members of the proposed class have suffered, and will continue to suffer in the future, economic losses, including the benefits owed under the health insurance plans and other general, incidental, and consequential damages, in amounts to be proven at trial.

**CAUSE OF ACTION – VIOLATION OF LA. R.S. 22:978**

104. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

105. HPS failed to follow the procedure for cancellation of a plan under La. R.S. 22:978, which provides that cancellation of policy requires that the policyholder be notified at least sixty (60) days prior to cancellation or nonrenewal.

106. Upon information and belief, the policy contained no language that waived the substance of La. R.S. 22:978.

107. HPS made no good faith attempt to effectuate reasonable notification of cancellation of the policy and/or denial of Plaintiffs' or the proposed class members' claims.;

108. As a direct and proximate result of HPS violation of La. R.S. 22:978, Plaintiff and members of the proposed class have suffered damages in an amount to be proven at trial.

**CAUSE OF ACTION – UNJUST ENRICHMENT**

109. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

110. HPS charged members of the proposed class insurance premiums for a policy that had lapsed and/or was cancelled, and for services that were not delivered. This was done in a manner that was unfair, unconscionable, and oppressive.

111. HPS knowingly received and retained wrongful benefits and funds from Plaintiff and members of the proposed class. In doing so, HPS acted with conscious disregard for the rights of Plaintiff and members of the proposed class.

112. As a result of HPS' wrongful conduct, HPS' have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and member of the proposed class.

113. HPS' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

114. Under the doctrine of unjust enrichment, it is inequitable for HPS to be permitted to retain the benefits they received, without justification, from arbitrarily cancelling the insurance policy of Plaintiff and members of the proposed class without prior notification. Doing so is unfair, unconscionable, and oppressive.

115. HPS further retention of such funds under these circumstances equate to unjust enrichment. The financial benefits derived by HPS rightfully belong to Plaintiff and members of the proposed class.

116. Unjust enrichment is pled herein in the alternative, if Plaintiff and members of the proposed class have no other adequate remedy at law.

**JURISDICTION AND VENUE**

117. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

118. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which there is diversity of citizenship between at least one proposed class member and one Defendant; the proposed class likely contains at least one hundred members; and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

119. In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily expect to try them in one judicial proceeding.

120. This Court has personal jurisdiction over HPS because HPS is conducting business within the State of Louisiana, have sufficient minimum contacts with the State of Louisiana, and otherwise purposefully avail themselves of the benefits and protections of Louisiana law, so as to render the exercise of jurisdiction by this Court proper and consistent with traditional notions of fair play and substantial justice.

121. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. HPS regularly conducts business in this District, and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## JURY DEMAND

122. Plaintiffs reallege and incorporated by reference all preceding allegations as though fully set forth herein.

123. Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Ernest J. Giusti, III, individually and on behalf of all other similarly situated, pray that this Complaint be deemed good and sufficient; that a summons be served upon Defendant, HPS Advisory Services, LLC, and after due proceedings are had, there be judgment in favor of Plaintiff, E.J. Giusti, III, individually and on behalf of all other similarly situated, and against Defendant, HPS Advisory Services, LLC, in a reasonable amount to be determined by the premises herein, with interest from the date of judicial demand, plus any other relief provided by law, including reasonable attorney's fees and costs.

**SIGNATURE ON NEXT PAGE**

Respectfully submitted,
**HERMAN & YOUNG**

BY: */s/Jacob D. Young*_________________

JACOB D. YOUNG (Bar No. 34845)
FRED L. HERMAN (Bar No. 6811)
1200 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 238-5050
Telefax: (504) 321-0576
jacob@hermanandyoung.com
fred@hermanandyoung.com

*and*

MEGAN KIEFER (Bar No. 32882)
ANNA M. SINGLETON (Bar No. 40050)
Kiefer & Kiefer
1100 Poydras St., Suite 1300
New Orleans, LA 70163
Telephone: (504) 828-3313
Telefax: (504) 828-0024
megan@kieferlaw.com